Argued and submitted July 6, reversed and remanded in part; otherwise affirmed
October 11, 1995, petition for review denied March 6, 1996 (322 Or 644)

# Hugh L. ALLEN,
## *Appellant,*

*v.*

# Stephen E. LAWRENCE
# and Allen T. Murphy, Jr.,
## *Respondents.*

## (91-1950-L-6; CA A86367)

903 P2d 919

Sandra Sawyer argued the cause and filed the briefs for appellant.

James A. Wallan argued the cause and filed the brief for respondents.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

WARREN, P. J.

## WARREN, P. J.

Plaintiff appeals the dismissal of his complaint against defendants, who are the attorneys who represented plaintiff in an earlier action for medical malpractice. We affirm in part and reverse in part.

In 1982, plaintiff obtained medical treatment for a spine condition. After discovering that the medical treatment had been negligently performed, plaintiff, acting *pro se*, filed separate actions against the doctor and the hospital for medical malpractice. After the claim against the hospital was dismissed for failure to state a claim, plaintiff retained defendants to represent him in both of his medical malpractice cases.

According to plaintiff's complaint, defendants failed to take any action on either medical malpractice claim, including failing to seek to set aside the judgment for the hospital and, in the case against the doctor, failing to respond to defendants' discovery requests, which resulted in an award of sanctions against plaintiff for discovery violations and ultimate dismissal of the complaint. We affirmed plaintiff's appeal from that dismissal without opinion. *Allen v. Campagna*, 97 Or App 587, 778 P2d 514 (1989).

Plaintiff then filed this action against defendants on April 16, 1991, alleging various claims arising out of defendants' representation of him in the medical malpractice claims. After his pleadings in this case were dismissed four times, plaintiff filed a fourth amended complaint, which set out claims for breach of contract, fraud and deceit, and negligence. The trial court granted defendants' motion to dismiss the complaint, concluding that the contract allegations failed to state a claim, and the other two claims were barred by the statute of limitations. After further repleading, the court also granted defendants' motion for summary judgment on plaintiff's sixth amended complaint, which alleged claims for intentional and negligent misrepresentation, on the grounds that those claims had not been timely commenced. Plaintiff appeals.

Plaintiff first assigns error to the dismissal of his claim for breach of contract. The trial court concluded that the allegations failed to state a contract claim, because the

duties that defendants allegedly breached were duties that arose from the general standard of care for professional conduct, not duties that arose from the contract. Accordingly, it concluded that the complaint failed to state a claim.[1]

Plaintiff argues that the trial court erred, because he alleges duties that were specifically undertaken in his contract with defendants, which were duties beyond the general standard of care for legal representation. Defendants respond that the trial court was correct that all of the alleged duties are duties encompassed in the general standard of care.

The issue is whether the claim denominated breach of contract is, in fact, a contract claim or whether it is a negligence claim in disguise. In *Securities-Intermountain v. Sunset Fuel*, 289 Or 243, 259, 611 P2d 1158 (1980), the Supreme Court explained the difference between contract and negligence claims against persons engaged to provide professional services:

> "If the alleged contract merely incorporates by reference or by implication a general standard of skill and care to which the defendant would be bound independent of the contract, and the alleged breach would also be a breach of this noncontractual duty, then ORS 12.110 [relating to claims for negligence] applies. Conversely, the parties may have spelled out the performance expected by the plaintiff and promised by the defendant in terms that commit the defendant to this performance without reference to and irrespective of any general standard. Such a defendant would be liable on the contract whether he was negligent or not, and regardless of facts that might excuse him from tort liability." (Citation omitted.)

*Accord Georgetown Realty v. The Home Ins. Co.*, 313 Or 97, 106, 831 P2d 7 (1992).

■     Accordingly, we review all the allegations of plaintiff's complaint to determine whether the agreement that plaintiff alleges he had with defendants required them to perform specific contractual duties irrespective of the general standard of care. Plaintiff's complaint alleges that he

---

[1] Plaintiff does not argue that, if the complaint fails to state a claim for breach of contract, the claim can proceed on any other theory, for example negligence. Plaintiff asserted a separate claim for negligence. The trial court dismissed that claim for failure to timely file.

retained defendants to represent him in his claims against the doctor and the hospital. As relevant, he then alleges:

> "Defendants promised and agreed with plaintiff that they would file a Motion to Set Aside Judgment in Case No. 87-2762-J-3 sufficiently setting forth plaintiff's claims against the [hospital] *and would get the case reinstated*; that they would file an Amended Complaint in Case No. 87-1427-J-3 succinctly setting forth legally acceptable facts giving rise to plaintiff's claims against the Doctor; that they would take depositions of the defendants in each of said cases; that they would meet all substantive and procedural requirements and inform and explain to plaintiff the progress and requirements of the litigation, providing plaintiff with regular reports on the progress of the litigation and each expenditure made from funds advanced." (Emphasis supplied.)

Plaintiff then alleges that defendants breached those promises and that, had defendants performed according to their promises, plaintiff would have prevailed in the claims against the doctor and the hospital.

We conclude that the claim alleges a breach of contract. An attorney's agreement to obtain a particular result, *i.e.*, to "get the case reinstated," does not implicate any general standard of care. It is an explicit promise to produce a particular result, apart from an agreement to exercise a general standard of care to prosecute a claim. Because the complaint includes an allegation that defendants breached a contractual promise, which could give rise to liability regardless of the level of care exercised in attempting to produce the result, the complaint states a claim for breach of contract, and the trial court erred in dismissing that claim.[2]

■ Plaintiff next assigns error to the court's dismissal of his claim for legal malpractice for failure to file within the two-year statute of limitations. ORCP 21 A(9); ORS 12.110.[3]

---

[2] We expressly do not decide whether all the allegations in the quoted paragraph allege contractual duties apart from the general standard of care.

[3] Defendants' motion sought dismissal of that claim "on the basis that the [negligence claim] is a sham and/or frivolous pleading," because the same claim had been dismissed on a previous motion for failure to timely file. The trial court treated defendants' motion as a request for reconsideration of its previous ruling that the claim had not been timely filed. Because the court considered the statute of limitations and based its ruling on that ground, we will treat the motion as having been made under ORCP 21 A(9) and review it accordingly.

The statute of limitations begins to run when the cause of action accrues. ORS 12.010. An action for legal malpractice "accrues when the plaintiff is in fact harmed and knows, or should know, that defendant's conduct has caused the harm." *Barnard v. Lannan*, 112 Or App 625, 628, 829 P2d 723 (1992); *U.S. Nat'l Bank v. Davies*, 274 Or 663, 548 P2d 966 (1976). This action was commenced on April 16, 1991. Accordingly, we consider whether the cause of action arose before April 17, 1989.

■          We review the court's ruling on the ORCP 21 A(9) motion to determine whether the pleading on its face shows that the action was not timely filed. ORCP 21 A(9); *see Eldridge v. Eastmoreland General Hospital*, 88 Or App 547, 746 P2d 735 (1987), *aff'd* 307 Or 500, 769 P2d 775 (1989). Although the trial court considered matters outside the pleadings, *i.e.*, the trial court file in the medical malpractice claim against the doctor, we are confined on appeal to what appears on the face of the pleading. *See* ORCP 21 A (court may consider matters outside the pleadings only on motions pursuant to ORCP 21 A(1) - (7)); *Dotson v. Smith*, 307 Or 132, 764 P2d 540 (1988); *Roberts v. Drew*, 105 Or App 251, 804 P2d 503 (1991); *O'Gara v. Kaufman*, 81 Or App 499, 726 P2d 403 (1986). *Cf. Thompson v. Telephone & Data Systems, Inc.*, 130 Or App 302, 881 P2d 819, *on recons* 132 Or App 103, 888 P2d 16 (1994). Therefore, we consider only the allegations contained in the negligence claim in the fourth amended complaint, and disregard any facts that the trial court and the parties apparently garnered from the trial court file in the medical malpractice claim against the doctor.

The complaint alleges that plaintiff retained defendants in December 1987 to represent him in the case against the doctor.[4] According to plaintiff, defendants failed to file an amended complaint in that case, to take depositions, to request documents, or to respond to requests for discovery. The failure to respond to discovery requests resulted in entry

---

[4] The pleading in this case alleges that defendants were negligent in their prosecution of two cases for plaintiff: a negligence claim against the hospital and a negligence claim against the doctor. Plaintiff does not argue that the trial court was wrong in holding that the statute of limitations had run as to negligence relating to the claim against the hospital. Therefore, the only issue is whether the claim against defendants was timely filed as to his allegations that they were negligent in handling his claim against the doctor. *See Gaston v. Parsons*, 318 Or 247, 864 P2d 1319 (1994).

of an award of sanctions against plaintiff for $1,000 on August 18, 1988, and entry of a final judgment of dismissal on September 14, 1988, for the continuing discovery violations.[5] Defendants failed to keep plaintiff informed of problems arising in the litigation and to advise plaintiff what was necessary to resolve the problems. Plaintiff alleges that an appeal was taken from the case, and that we affirmed the trial court's judgment without opinion on July 19, 1989. According to the complaint, "[o]n that date plaintiff learned that the defendants had been negligent, and that he had been damaged by their negligence."

Plaintiff argues that the trial court erred in dismissing this claim as not timely filed, because the cause of action did not accrue until he was harmed, and he was not harmed by defendants' negligence until the appeal was resolved in July 1989. He cites *U.S. Nat'l Bank* for the proposition that, in a legal malpractice case, damage does not occur until the underlying case is finally resolved. He claims that, "[h]ad the appellate court reversed [the trial court's] dismissal, plaintiff would have suffered no harm whatsoever."

Defendants respond that plaintiff was harmed not only by the dismissal of the action but also by the order to pay sanctions of $1,000 for defendants' failure to respond to the discovery requests in the underlying case. They assert that, at the time the award of sanctions was made, plaintiff knew he was harmed and that the harm was caused by defendants' negligence.

In *U.S. Nat'l Bank*, the Supreme Court considered when the plaintiff should have known that the defendant attorneys' actions caused the plaintiff's harm. In that case, the defendants had advised the plaintiff's decedent in connection with the sale of his stock in a corporation. The corporation sued the decedent, asserting that the sale was in violation of the law. The case was ultimately settled by payment by the decedent to the corporation. The plaintiff then sued the attorneys, claiming that the decedent's loss was caused by the attorneys' negligent advice. The defendant attorneys argued

---

[5] The pleading on the negligence claim does not allege the reason for the dismissal. Both parties assert, however, that the dismissal was a result of continuing discovery violations.

that the statute of limitations had run, because more than two years had passed since the decedent had been sued on the stock sale. The Supreme Court concluded that there was nothing on the face of the complaint that showed as a matter of law that the statute of limitations had run. It held that the cause of action for legal malpractice did not begin to run until the plaintiff knew or should have known that his expense in defending the action by the corporation was caused by negligent advice of the defendants. It reasoned that

"[i]n many situations the closeness of the legal questions involved would make it impossible to ascertain until the ultimate determination of the case whether it was brought as the result of the attorney's bad advice or whether it the result of a misapprehension on the part of the party who sued as to his legal rights." 274 Or at 668.

Thus, although the plaintiff knew that the harm had occurred when he was called on to defend the action by the corporation, he was not necessarily aware that the harm was caused by the defendants' negligent advice.

In this case, plaintiff's argument and defendants' response to it are both premised on at least some facts that are not in the complaint. According to the complaint, plaintiff was ordered to pay sanctions in August 1988 and the case was dismissed in September 1988. Plaintiff did not learn until July 19, 1989, when this court affirmed the dismissal of the underlying action, that "defendants had been negligent, and that he had been damaged by their negligence." Under the facts alleged in the complaint, even if plaintiff knew that he had been harmed because he was ordered to pay $1,000 as a discovery sanction, there are no facts alleged that establish as a matter of law that plaintiff should have known that that harm or the harm caused by the dismissal of the action was caused by defendants' negligence, until the appeal had been resolved against him.[6] Accordingly, under the reasoning of

---

[6] We recognize that plaintiff admitted in his brief

"that he was aware that his case had been dismissed and that he believed this dismissal to be the result of his attorneys' negligent failure to comply with discovery orders.

"Plaintiff had knowledge that defendants' acts had caused his case to be dismissed. He was aware that the defendants' acts had caused him harm … at least for the present time."

*U.S. Nat'l Bank,* the trial court erred in dismissing the negligence claim for failure to timely file.

Finally, plaintiff assigns error to the court's granting of defendants' motion for summary judgment on his sixth amended complaint, which included claims for intentional and negligent misrepresentation. The court concluded that there were no genuine issues of material fact and that defendants were entitled to judgment as a matter of law because the claims had not been timely commenced. ORCP 47; ORS 12.110.

In his claims for misrepresentation, plaintiff asserts that defendants made certain representations to him in order to induce him to hire them to represent him in his medical malpractice actions. Those representations include

"that defendants were capable and desirous of representing him in the legal proceedings he had filed * * * that they would diligently and in good faith pursue said cases in plaintiff's behalf during negotiations for settlement and through any trial necessary; and that plaintiff could rely upon their experience and expertise to prosecute his claims in said cases; and that they would keep his best interests foremost in their considerations and actions."

Plaintiff also alleged that defendants failed to disclose to him that, at the time plaintiff hired defendants to represent him in his medical malpractice claims, defendant Murphy was already representing and was a codefendant with the attorney who was representing the doctor in plaintiff's medical malpractice case. In his intentional misrepresentation claim, plaintiff alleges that, as a result of the undisclosed conflict of interest, defendants intentionally failed to perform their representations, causing plaintiff damage in loss of his claims against the hospital, and entry of a sanction order of $1,000 against him and dismissal of his claim against the doctor. In

---

Those facts are not in the complaint, however, and we therefore do not consider them in deciding whether the complaint shows on its face that the claim was not timely filed. Although in *McGanty v. Staudenraus,* 321 Or 532, 544 n 6, 901 P2d 841 (1995), the Supreme Court considered stipulated facts in its review of a motion to dismiss for failure to state a claim, we decline to hold plaintiff in this case to his unstipulated admissions, because this case must be remanded on the contract claim and may be subject to repleading.

his negligent misrepresentation claim, plaintiff alleges essentially the same facts, except that he asserts that the representations were negligently made.[7]

Plaintiff makes a single argument relating to both of his misrepresentation claims: that the statute of limitations did not begin to run until he learned that the conflict of interest had an effect on his litigation, which was not until June 1989. He asserts that it was not until then that he "learned that the actions of the defendants had caused his harm." Defendants respond that the cause of action accrued, and therefore the statute of limitations began to run, when plaintiff knew all of the facts giving rise to the claim, and not when plaintiff became aware of the full effect of the conflict of interest.

Both parties ignore the fact that the sixth amended complaint contained two separate claims: one for intentional misrepresentation and the other for negligent misrepresentation. Those two claims must be considered separately. *See Gaston v. Parsons*, 318 Or 247, 864 P2d 1319 (1994).

■■ The statute of limitations begins to run on a fraudulent misrepresentation claim when the plaintiff either discovers the fraud or has knowledge of facts sufficient to call for an inquiry. ORS 12.110(1); *Mathies v. Hoeck*, 284 Or 539, 542-43, 588 P2d 1 (1978). The summary judgment record in this case shows that plaintiff knew by October 19, 1988, that defendants had a conflict of interest at the time he hired them, and that they had not disclosed that conflict to him. He knew even before that date that his medical malpractice claims had been dismissed and that he had been ordered to pay sanctions for discovery violations that he asserts were caused by defendants' failure to pursue his medical malpractice claims as they had represented they would. He was put on notice of facts sufficient to call for an inquiry; in fact, in October 1988 he began to inquire by contacting an attorney

---

[7] We express no opinion about whether those allegations state a claim that is any different in substance from plaintiff's legal malpractice claim. In essence, plaintiff seems to be claiming that the conflict of interest was the *reason* for defendants' alleged mishandling of the case. A motive to intentionally or negligently fail to perform a professional duty is not an element of a cause of action for professional tort. We note also that a breach of ethical duty does not necessarily give rise to damages or a cause of action.

regarding defendants' conduct. It is apparent from the undisputed facts in the summary judgment record that plaintiff knew of the facts giving rise to his claim for intentional misrepresentation at least by October 1988, when he contacted the first attorney for advice regarding what he had learned about defendants' representation of him. The trial court did not err in granting defendants' motion for summary judgment as to the claim for intentional misrepresentation.

■■ Plaintiff's second claim is for negligent misrepresentation. That claim accrued, and the statute of limitations began to run, when plaintiff knew or should have known that he had a loss caused by his reliance on defendant's misrepresentation. *Duyck v. Tualatin Valley Irrigation Dist.*, 304 Or 151, 162, 742 P2d 1176 (1987). It is not necessary that plaintiff knew that defendants were at fault; the claim accrued when plaintiff knew that the representations had been false and that he had suffered a loss caused by his reliance on the misrepresentations. *Id*.

In this claim, plaintiff alleges that defendants made representations to him about the care with which they would pursue his medical malpractice claims, and that they failed to disclose that they had a conflict of interest that might interfere with their performance. The summary judgment record shows, as it does for the intentional misrepresentation claim, that plaintiff knew by October 1988 that defendants had made misrepresentations about their ability to represent him, on which he relied when he hired them to pursue his medical malpractice claims. He knew by October 1988 that they had not pursued those claims as they had said that they would, and that, as a result, he had suffered a loss by the dismissal of his cases and the order of discovery sanctions against him. Accordingly, by October 1988, plaintiff knew all of the facts giving rise to the claim and, therefore, the time for filing his action began to run at that time.

Plaintiff argues that he did not learn that defendants' actions had caused him harm until June 1989, when an attorney gave him an opinion that the conflict of interest interfered with defendants' representation of plaintiff. In essence, he asserts that, until he knew the *reason* for defendants' mishandling of his claim, which he asserts was the

underlying conflict of interest, he could not have known that he had a claim against defendants for misrepresentation.

The reason or motive for defendants' action is immaterial to the question of when the cause of action accrued. The reason or motive is not one of the facts giving rise to the claim. Plaintiff's failure fully to understand the effect of defendants' conflict of interest until June 1989 does not toll the running of the statute of limitations. The trial court did not err in granting defendants' motion for summary judgment on plaintiff's claim for negligent misrepresentation.

Judgment on claims for breach of contract and negligence in fourth amended complaint reversed and remanded; otherwise affirmed.